(No. 36296

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RODNEY DAWSON, Plaintiff in Error.

*Opinion filed May 19, 1961.*

McCoy, Ming & Leighton, of Chicago, (George N. Leighton, of counsel,) for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher, William L. Carlin, and Marvin E. Aspen, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

The defendant, Rodney Dawson, was charged with the crime of armed robbery in the criminal court of Cook County. He waived his right to trial by jury and, following a bench trial, was found guilty. A motion for probation was allowed but on the defendant's own motion, the probation order was vacated. Thereafter the defendant was sentenced to the penitentiary for a term of not less than two nor more than five years. The case is now here on a writ of error in which his only contention is that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

The two principal witnesses for the State were Eddie Baker and Patricia Hill. Baker testified that he was employed as a cab driver for the Pershing Livery Service, located in the Pershing Hotel in the city of Chicago. At about 7 p.m. on the night in question, he was just coming to work and at that time he had about four dollars in change and bills and also a $10 bill. He stopped at the dispatcher's office of the cab company, where Mrs. Hill was employed as a dispatcher, and asked her for change for the bill. She gave him a $5 bill and five singles and Baker walked from the dispatcher's office into a back room where the drivers sometimes waited in between calls. There were three or four other men in the back room at the time and about five

men standing in the corridor leading to the back room. Baker testified that as he was putting some of the change into his money changer, he heard a voice say, "Drop it." He turned around and saw the defendant standing close to him and asked defendant why he should drop the money. The defendant told him that he was a police officer and that he had caught Baker gambling. Baker testified that the defendant then pulled out his pistol and repeated his demand and when Baker did not immediately comply, the defendant pulled out his police badge and again told Baker to drop the money. Baker testified that he then dropped twelve dollars on the floor, consisting of seven $1 bills and a $5 bill. The defendant then put his pistol back in the holster and staggered over and picked up the money. As he leaned over, his pistol fell into the wastebasket. The defendant pushed Baker out of the way while he picked up the pistol and the money and then took Baker over to the phone booth where he said he was going to call the police. The defendant put a dime into the telephone but did not make a call. While the defendant and Baker were at the telephone, the other men in the place were talking to the defendant and telling him that Baker hadn't done anything wrong. Baker testified that after the incident at the telephone booth, the defendant told Baker to come with him and the two of them walked down a hall leading to the hotel. Baker asked the defendant to give him back his money and the defendant first gave him five dollars but when Baker told him that that was all the money he had, the defendant gave him two more dollars. The defendant then went on to tell Baker about his family and inquired about Baker's family. The defendant went into the hotel and Baker returned to the office. In the meantime, Mrs. Hill had called the police, and after the police arrived they went into the hotel tavern where they found the defendant sitting at the bar.

Mrs. Hill testified that she knew the defendant and had seen him on several occasions prior to the night of the al-

leged robbery, since the defendant was assigned to duty as a bodyguard for a man living in the hotel. She testified that right after she had given Baker the change, the defendant walked in the front door and proceeded down the hall to the back room. She heard the defendant say "Drop it" and went to the back room to see what was the matter, where she saw the defendant take out his revolver and wave it in Baker's face while he repeated his demand. She saw Baker drop the money and saw the defendant reach over to pick it up and she saw the gun drop in the wastebasket. She testified that the defendant took Baker over to the telephone where he said he was going to call the police and testified that no call was actually made. She saw the defendant and Baker go into the hotel corridor and saw them return at which time the defendant gave Baker five dollars. She testified that there were about nine men in the cab office at the time of these events and that three or four of them were in the back room and the others were in the corridor leading to that room.

The arresting officers testified that after receiving the call from Mrs. Hill, they proceeded to the cab office and after a conversation with Baker, they went into the hotel tavern where they found defendant. The defendant stated to the officers that he had been in the cab office and had broken up a crap game. He denied taking any money from Baker. All of the State's witnesses testified that the defendant appeared to have been drinking prior to the occurrence in the cab office. The other men who were present in the cab office at the time of these events did not testify.

For the defense, several witnesses including an attorney, a school teacher, a United States government technician, a school principal and a National Guard officer, all testified that they knew the defendant and that his reputation as a peaceful and law abiding citizen and his reputation for truth and veracity were excellent. The defendant testified that prior to the night of the alleged robbery, he had

been in the cab office on several occasions. He had spoken to Mrs. Hill on several occasions about the fact that the cab drivers were parking in a no-parking zone in front of the hotel and had asked her to do something about it. She had told him that since he was a police officer, he should take care of it himself. Defendant testified that as he was walking down the hall in the cab office, he heard some conversation and noise coming from the back room and as he opened the door to that room, three men jumped up off the floor, putting money in their pockets. Baker was still on his knees on the floor. The other men left the room but Baker remained and asked the defendant who he thought he was. The defendant replied that he was a police officer and showed him his star. Defendant told Baker that he should know better than to be shooting dice there and Baker told him he did not care who the defendant was, he had no business coming in there and bothering him. Defendant testified that he did not see any dice on the floor but did see some money. Baker picked up this money and walked out of the room and the defendant went into the hotel tavern. He denied that he ever took any of Baker's money, denied that he took out his gun and denied that he ever gave any money to Baker. At the conclusion of the trial, the judge stated that he believed the testimony of Mrs. Hill and Baker and that he had no doubt as to the defendant's guilt.

The finding of the trial judge as to the credibility of the witnesses is entitled to great weight. However, we cannot, in every case, accept the trial judge's finding as conclusive, for the rule is that it is the duty of this court to examine the evidence in a criminal case and if it is so unsatisfactory and unreasonable as to raise a serious doubt of defendant's guilt, the conviction must be reversed. (*People* v. *Williams,* 414 Ill. 414; *People* v. *Buchholz,* 363 Ill. 270.) The burden is always upon the State to prove the defendant guilty beyond a reasonable doubt and a judgment of conviction can be sustained only on credible evidence which removes all

reasonable doubt of defendant's guilt. Where the State's evidence is improbable, unconvincing and contrary to human experience, we have not hestiated to reverse the judgments of conviction. In *People* v. *Coulson,* 13 Ill.2d 290, we held that testimony of the complaining witness that the five men who took his wallet at gunpoint voluntarily accompanied the witness to his home upon the witness' promise to get them some more money was unworthy of belief. In *People* v. *Buchholz,* 363 Ill. 270, we held that testimony of the complaining witness that the defendant, after robbing her and finding she had no money, accompanied her home and supplied her with his name and telephone number was of the same character. In *People* v. *O'Connor,* 412 Ill. 304, it was held that the testimony of the alleged victim of multiple rape that after the attack, she and the defendants went to several taverns together was unworthy of belief.

We find the evidence in this case to be of similar character as that in the above cases. It is simply incredible to believe that the defendant, a person of good character and reputation, would go into an office where he was well known and in the presence of many witnesses, demand money from Baker at gunpoint after identifying himself to Baker by showing him his badge. The testimony that the defendant committed this alleged robbery in the presence of all the witnesses, threatened to call the police (although he was himself a police officer), and then returned most of the money is not of the clear and convincing character required to sustain a conviction of the serious charge of armed robbery. The final incongruity is found in the fact that after the alleged crime, the defendant made no attempt to flee the scene, but instead went into the hotel bar for a drink. This behavior is scarcely consistent with the theory that the defendant had just committed an armed robbery.

Our review of the evidence in this case satisfies us that the defendant was not proved guilty of the crime of armed

robbery beyond a reasonable doubt. There is nothing in the record to indicate that any additional evidence will be available to the People upon a new trial and we therefore reverse the judgment of conviction without remand.

*Judgment reversed.*