(No. 37915.—

The People of the State of Illinois, Defendant in Error, *vs.* James Pellegrino, Plaintiff in Error.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

Julius Lucius Echeles and Melvin B. Lewis, both of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys

General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

In a bench trial in the criminal court of Cook County James Pellegrino was convicted of the murder of Charles Fowler and sentenced to the penitentiary for a term of 14 to 16 years. A writ of error has been issued to review his conviction.

On June 17, 1962, Crystal Sanders, a prostitute, met Fowler in a tavern on West Madison Street in Chicago and solicited him. They went to a hotel on West Madison, registered as husband and wife, and were assigned a room on the second floor. After twenty minutes of sexual intercourse, Crystal refused to continue and Fowler punched her in the face. The blow caused a great deal of bleeding about her face and her eyes remained blackened for about two weeks. After she screamed, defendant, who was the hotel manager, R. F. Daniel, who was the desk clerk on duty, and a person identified only as Jimmy the Boxer, a patron of the hotel, rushed into the room. The deceased was severely beaten while in the room and then carried outside to the rear of the hotel. A passerby discovered the deceased and called the police. He was taken to the hospital and died without revealing who had beaten him.

Crystal Sanders, also known as Donna Campbell and Mrs. Icoullo, testified that defendant kicked the deceased a number of times in the ribs and stomped on deceased's head and face with his foot. On cross-examination she admitted that when the police came to her home several hours after the affair, she refused to answer any questions. Her refusal to answer questions continued during interrogation at the police station, the county morgue and another police station. When informed that she was to be charged as an accessory to murder, she said that Jimmy the Boxer had beaten the deceased. She then changed her story, said Daniel was the

one who had kicked the deceased and signed a statement to that effect.

Clara Sykes, also known as Miami Kate, testified that she was sitting in the lobby on the second floor of the hotel when she heard a woman scream and saw defendant, Daniel and Jimmy the Boxer run to the room occupied by deceased and Crystal. She saw the men drag the deceased out of the room into the hallway and saw defendant kick him a few times. She heard Daniel say "Don't kick him, you'll kill him" and defendant replied "What do I care? He hurt my girl." On cross-examination she said she was a prostitute and that she was just going off a four-week "drunk" when the beating occurred. Although she had not had a drink that night she had the "shakes pretty bad" and was wishing she had another drink "to stop the shakes". She started to get up from her chair when she heard the screams but she "was pretty shaky". She saw someone help Crystal from room 205 to room 202. She could not recognize the person who helped Crystal although she was only 3 feet from them. In order to see how Crystal was, she managed to get out of her chair and walk five feet to room 205 by holding to the wall. After this incident she continued her "drunk" for another three weeks.

Daniel, the desk clerk on duty at the time of the incident, was called as a court's witness. He testified that Jimmy the Boxer punched and kicked the deceased a number of times around the body and face. He said defendant told Jimmy the Boxer to "leave him alone, he's had enough" and that defendant did not hit or kick the deceased. On cross-examination he admitted that at the corner's inquest he said defendant punched and kicked deceased and Jimmy the Boxer did not hit him. The People also proved that Daniel had been convicted of several felonies.

Margaret Callahan, also known as Margaret Elizabeth Belton, a desk clerk at the hotel who was present but not on duty at the time of the incident, testified for the defense.

She testified that she viewed the affray from a nearby linen closet. She saw Jimmy the Boxer, who rented a room in the hotel under the name of Jimmy Johnson, kick the deceased a number of times and did not see defendant punch or kick him. She said Jimmy later told her that he "didn't mean to hit the man that hard." On cross-examination she admitted signing a pretrial statement in which she said she had not seen anyone hit deceased. She also said that Jimmy the Boxer had come to the hotel to see a woman and had just rented a room under the name of Reynolds when he got involved in the affair.

The defendant testified that Jimmy the Boxer hit deceased with his fist and then began kicking him and that he told him to quit kicking the deceased. He denied that he struck or kicked the deceased.

Jimmy the Boxer did not testify.

Thus, only Crystal Sanders and Clara Sykes testified at the trial that they had seen the defendant hit and kick deceased. Crystal, who was stunned, bleeding and crying at the time of the beating, first accused Jimmy the Boxer, then Daniel and finally defendant. There is nothing to indicate why she changed her story or on which occasion she was telling the truth. Clara Sykes was in the fourth week of a seven-week period of drunkenness at the time of the event. Although she had not had a drink on that evening, her prior drunkenness had affected her to the extent that she could not walk five feet without holding the wall and did not recognize the person, who was three feet away from her, helping Crystal.

The trial judge's finding on the credibility of the witnesses is entitled to great weight, but it is not conclusive and we will reverse a conviction where the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People* v. *Butler*, 28 Ill.2d 88; *People* v. *Bartley*, 25 Ill.2d 175; *People* v. *Jefferson*, 24 Ill.2d 398.) We find the evidence of defendant's participation in the fatal beating

of deceased to be so unsatisfactory as to require a reversal of his conviction. The judgment of the criminal court of Cook County is accordingly reversed.

*Judgment reversed.*