THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALLESTER ALEXANDER, JR., Defendant-Appellant.

Third District   No. 3—89—0657

Opinion filed August 24, 1990.

Daniel J. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Allester Alexander, was found guilty of unlawful possession of a controlled substance (Ill. Rev.

Stat. 1987, ch. 56½, par. 1402.1) and unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1). The trial court entered judgment on the intent to deliver count and sentenced the defendant to 15 years in prison. The defendant appeals. We affirm.

On January 12, 1989, Officers Steve Peterson and James Bridges of the Peoria police department received information that a woman they were looking for in connection with a fraud case was seen at an apartment complex. The informant indicated that the woman was in apartment 2F. The officers went to the complex, knocked on the door to 2F, and identified themselves as police officers. Edward McNeeley, the tenant, answered the door. He stepped into the hallway, closing the door behind him. The officers informed McNeeley that they were looking for Paula Carroll and that they would like to look through his apartment. McNeeley agreed to the search but requested that the officers wait a few moments while he picked up some clothing. McNeeley reentered the apartment, closed the door and locked it.

Bridges told Peterson that he was afraid someone would attempt to escape out the back of the apartment, so he went downstairs and walked toward the back door to the apartment building. As he approached the back door, Bridges heard "a noise like somewhat muffled metallic rattling." Bridges went outside and noticed a white plastic garbage bag on the ground beneath the window of apartment 2F.

Meanwhile, Peterson was allowed into McNeeley's apartment to conduct the search for Paula Carroll. Peterson noticed the defendant in the living room of the apartment. After looking through the apartment and finding that Carroll was not there, Peterson left the apartment and met Bridges coming up the stairs. The officers went outside, and Bridges showed Peterson the garbage bag. Bridges reached into the bag and pulled out a blanket. As he pulled out the blanket, a triple beam scale dropped out of the blanket. The officers looked into the plastic garbage bag and noted a paper grocery bag containing a paper carton. This carton was open. The officers noticed a white powdery substance in the carton which was spilling out into the paper bag.

As the officers were considering their next move, they heard the defendant in the hallway say something to the effect, "I will be back in a few minutes." The defendant came down the stairs and was confronted by the officers. The defendant was asked whether he was the individual Peterson had just seen in apartment 2F. The defendant replied no and that he had been in the apartment across the hall, working. McNeeley then came downstairs. McNeeley and the defendant

were arrested, handcuffed, and made to sit on the floor in the hallway, while other officers were called to the apartment complex. At one point, the defendant complained that the handcuffs were too tight. The defendant stood up, and while the handcuffs were being loosened, Bridges noticed something protruding from the defendant's back pocket. Bridges retrieved the object, described as a round rubber grommet. It was later shown that the object was used to stabilize a triple beam scale during shipping.

The defendant testified that he had been dropped off at the apartment complex and that he planned to meet a woman called Sparky. After he was unable to locate her, he began walking down the road and was picked up by McNeeley, who he thought lived down the road from the complex. Instead, McNeeley returned to the apartment complex. The defendant testified that he had not known that McNeeley maintained an apartment in the complex. The defendant asked to use McNeeley's phone to call Sparky.

The two had not been in McNeeley's apartment very long when there was a knock on the door and the police announced their presence. McNeeley went into the hall and spoke with the officer. He re-entered the apartment and while motioning toward a bedroom told the defendant to "get rid of that stuff." The defendant ran to the bedroom and noticed a blanket in the middle of the room. He bundled up the blanket and stuffed it into a paper bag he found sitting open in the room. He noted an object in the blanket which he testified he later learned was the triple beam scale. He took the paper bag and put it into a white plastic garbage bag he also found in the bedroom. He then threw it all out the window. The defendant testified that he did not know of the presence of any drugs and that he thought the items he threw out the window were stolen goods. After throwing the bag out the window, he noticed a small rubber object on the floor in the area where the blanket had been lying. He picked the object up and put it in his back pocket. The defendant's fingerprint was found on the paper carton, which tests later showed contained 801.9 grams of 99.7% pure cocaine.

On appeal, the defendant contends that he was not proven guilty beyond a reasonable doubt because the evidence was insufficient to show that he had actual or constructive possession of the cocaine.

■ When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■■ ■ To support a conviction for the unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was in his immediate and exclusive control. (*People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.) Possession may be established by evidence of actual physical possession or constructive possession. (*People v. Jones* (1982), 105 Ill. App. 3d 1143, 435 N.E.2d 823.) Actual possession requires an act of physical dominion over the narcotics, while constructive possession requires a showing that the defendant controlled the premises upon which the narcotics are found. (*People v. Calhoun* (1977), 46 Ill. App. 3d 691, 361 N.E.2d 55.) Actual possession is proved by testimony which shows defendant exercised some form of dominion over the unlawful substance, such as trying to conceal it or throw it away. *People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.

■■ ■ It is well settled that knowledge is an essential element in the chain of proof of the crime of possession of narcotics. (*People v. Ackerman* (1971), 2 Ill. App. 3d 903, 274 N.E.2d 125.) Although the element of knowledge is seldom susceptible to direct proof, it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may fairly be drawn that he knew of the existence of the narcotics at the place they were found. (*People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) Whether there is knowledge and control are questions of fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Wiley* (1988), 174 Ill. App. 3d 444, 528 N.E.2d 26.

In the instant case, the defense went to extraordinary lengths to prove that the defendant was not a tenant or owner of the apartment. The defendant did not have control of the premises, and therefore we are not presented with a case of constructive possession. The question is whether the evidence was sufficient to prove actual possession.

■■ Here, the defendant's fingerprint was found on the paper carton containing the cocaine. The evidence showed that the amount and purity of the cocaine were such that it could not possibly have been held for an individual's personal use. Under the circumstances, the jury could have fairly inferred from the evidence that the defendant had the requisite knowledge to prove actual possession. He threw the carton of cocaine, along with the other items in the plastic garbage bag, out the window. His conduct in running to the bedroom and disposing of the cocaine was sufficient to allow the jury to find that he

had knowledge of presence of the cocaine. The jury was not required to believe the defendant's explanation that he thought the items were stolen goods and that he was disposing of them out of friendship for McNeeley. It was for the jury to decide what weight and credibility to give to the defendant's testimony. The evidence showed that the defendant lied to the police on at least two occasions during the course of their investigation.

In sum, viewing the evidence in the light most favorable to the prosecution, we find the jury could have found beyond a reasonable doubt the essential elements of possession with intent to deliver.

The defendant also contends that he is entitled to a new trial because testimony by a State's witness indicated that the defendant had invoked his constitutional right to remain silent during the course of a police interrogation.

At trial, the State presented the testimony of Officer Michael White concerning statements made by the defendant while in police custody. White testified that after the defendant was taken to the Peoria County sheriff's department, the defendant agreed to be interviewed by police officers, including White. At trial the following exchange took place between White and the assistant State's Attorney:

"Q. Could you tell us what he said to you and what you said to him?

A. I told Mr. Alexander that I didn't believe him, that I believed that he knew about the cocaine that was found outside the window of the apartment and told him one of the theories that I had believed in, that Mr. Alexander had been within the apartment building, and that Mr. McNeeley had answered the front door when the two detectives had arrived there, and that with McNeeley at the front door, that I believed Alexander had thrown the items out the rear window of the apartment building.

Q. And was that the extent of your conversation with him?

A. He denied that and said that wasn't true. I also told him that I didn't believe he was responsible solely for that large amount of cocaine and asked him to talk with me about it. At that time he said that he thought he had better confer with an attorney before we spoke anymore, so our conversation was terminated at that point."

The defendant argues that White's statement regarding the termination of the interview improperly revealed to the jury the defendant's invocation of his constitutional right to remain silent. However, we find the defendant waived this issue by the defendant's

subsequent actions at trial. Defense counsel did not object to the statement by Officer White concerning the termination of the interview. In fact, on cross-examination counsel questioned White extensively on the meaning of *Miranda* warnings and the fact that the defendant at one point in the interview expressed his desire to speak with an attorney before he said anything further to the police. We also note that the defendant in his testimony mentioned the termination of the interview and that in closing arguments both the State and defense counsel commented on the fact that the defendant terminated the interview with White.

■■ ■ Nor do we find merit to the defendant's contention that counsel was ineffective in failing to object to the statement by White and then compounding the error by questioning White on the issue.

To prove ineffective assistance, the defendant must first demonstrate that his counsel's performance failed to meet reasonable professional standards, and second must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) A defendant claiming ineffective assistance must overcome a strong presumption that the challenged action of counsel was the product of sound trial strategy and not of incompetence. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In the instant case, the defendant has failed to overcome this presumption. Viewed in its totality, we cannot say that counsel's representation failed to meet reasonable professional standards.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.