THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VICTORIA PETER, Defendant-Appellant.

First District (5th Division)   No. 1—89—3497

Opinion filed September 30, 1991.—Rehearing denied November 1, 1991.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William P. Pistorius, and Steven M. Mondry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

After a jury trial, defendant Victoria Peter (Peter) was found guilty of possession of a controlled substance with the intent to deliver. (Ill. Rev. Stat., 1988 Supp., ch. 56½, pars. 1401(a)(1), 1401.2(1).) Peter had been apprehended by United States Customs agents upon entering this country after they discovered, concealed in her luggage, a container with 240.51 grams of 91% pure heroin. Peter was later sentenced to 12 years' imprisonment, and she now appeals her conviction and sentence, contending that: (1) the State failed to prove that she knowingly possessed the contraband; (2) she was denied a fair trial due to the admission of certain opinion evidence; and (3) that the sentencing court improperly considered factors inherent in the offense, resulting in an excessive sentence. For reasons that follow, we affirm both the conviction and sentence.

According to testimony adduced at trial, Peter, a permanent resident alien, returned to the United States on October 20, 1988, after visiting her native country of Nigeria. She left Lagos, Nigeria, on the previous day and traveled first class on a flight arriving at O'Hare Airport via Amsterdam. Upon her arrival at O'Hare, she presented her passport and documents to an initial customs agent. Because her declaration card indicated that she was bringing agricultural products into the country and because she had traveled from a "narcotics source country," inspection of her luggage was necessary. For this reason she was directed to the secondary checkpoint.

Peter proceeded to the next inspection station with her luggage, which consisted of one carry-on bag and a suitcase. At this secondary inspection point, Inspector Petry checked the contents of Peter's luggage. He testified that he first inspected her carry-on bag, which contained cosmetics and personal hygiene items. He then inspected her suitcase and found that it contained some grain products and a package which appeared to contain a large quantity of strong-smelling, smoked fish wrapped in plastic. Amid the package of fish, however, was a hard solid object also wrapped in plastic. He removed this object, unwrapped it and found that it was a canister of powder.

At this point Peter took the canister out of his hands, shook some of the scented powder onto his hand and exclaimed, "Oh, that's nothing, just talcum powder."

Although his suspicions had been aroused, he set the canister aside and continued with his inspection of Peter's suitcase. When he was done, however, he picked the canister back up and said that he wanted to take a closer look. Inspector Petry testified that a momentary look of panic passed across Peter's face but that she regained her composure immediately and assured him that the canister contained talcum powder.

Inspector Petry took the 3½-inch by 4-inch round canister to a nearby X-ray machine and X-rayed the canister. The machine revealed that the canister contained an internal partition. To check this, the inspector inserted a probe into the canister and found that the probe could only be inserted to about one-quarter of an inch. He then emptied the small amount of powder from the top portion of the canister and field tested it, finding it to be talcum.

The inspector then punctured the secret compartment with a pocket knife and found that it contained a white powder, which field tested positive for the presence of heroin. The canister was then confiscated, placed in a sealed container and turned over to Drug Enforcement Agency officials. Peter was placed under arrest.

Further analysis of the substance in the canister revealed that it was 240.51 grams of white heroin, which was approximately 91% pure. Its street value was estimated at about $2 million.

Peter raises no issues concerning the chain of custody of the evidence. In fact, Peter does not deny that she had in her possession a package containing heroin. Rather, Peter contends that the State did not prove her guilty beyond a reasonable doubt because it did not prove that she possessed the container knowing that it contained the contraband.

Peter testified at trial that, after visiting her family in Callaba, Nigeria, she purchased a first class, standby ticket for a flight scheduled to leave Lagos, Nigeria, on Monday evening, October 17, 1988. According to her testimony, she traveled with her friend, Nasser Aipaye, to Lagos, the capital and only city with an international airport, and stayed at the home of Kunle Adeshiyan, a friend of Aipaye's. On Monday she learned that the flight for that evening was full and that she could not leave. However, she was allowed to remain at Adeshiyan's home until she was able to obtain a seat on a flight leaving Lagos on Wednesday, October 19, 1988.

Peter testified that on Tuesday her host, Adeshiyan, asked her to take some presents with her for a friend of his in the United States and that she agreed. She did not know who this friend was, nor did she know his name, but stated that he lived in New York and was to call her regarding the gifts. The presents allegedly included some food items, some creams and soaps, and other unidentified items. She indicated that he gave her these items contained within a Nigerian lady's handbag, but that she separated the food items for packing them within her suitcase. The other items, she claimed, remained inside the purse within her luggage.

Peter further testified that upon arriving in the United States she reported that she was bringing food items into the country, knowing from past experience that she would be subjected to a rigorous inspection. She also claimed that she was unconcerned when the inspector removed the canister from her luggage and denied taking the canister out of his hand or saying anything to him concerning its contents. Peter also denied that the canister was wrapped individually in plastic amid the fish and claimed that the canister was taken from inside the purse. Finally, she claimed that it was only when she was arrested that she learned that the canister contained a controlled substance.

In her first issue, Peter argues that she was not proved guilty of knowingly possessing heroin. She contends that the State's own evidence indicates that the compartment containing the contraband was concealed within the canister of powder and that it was only susceptible to discovery with the use of an X-ray machine. Consequently, she contends that it was unreasonable to conclude that she had knowledge of its presence. We disagree.

Although the successful prosecution of the offense of possession of a controlled substance with the intent to deliver requires proof beyond a reasonable doubt that the offender knowingly possessed the contraband, the knowledge element is rarely susceptible to direct proof. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291-92, 549 N.E.2d

344.) It may be proven, therefore, by use of circumstantial evidence, *i.e.*, evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he or she possessed the requisite knowledge. *People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767; *People v. DeCesare* (1989), 190 Ill. App. 3d 934, 941, 547 N.E.2d 650.

In the present case the State was able to show that, although the narcotic was concealed in a canister of talcum powder, it was not in the bag containing cosmetics and personal care items, but rather, was discovered in Peter's suitcase amid a package of strong-smelling fish. Peter failed to deny ownership of the container when confronted with its seizure by the customs agent, and she made an attempt to convince the agent that the canister contained talcum powder. The circumstances, along with her actions, declarations, and conduct, were sufficient to give rise to a reasonable inference that Peter had knowledge of the presence of the concealed drug. We do not find this evidence so palpably unsatisfactory that we feel compelled to overturn the decision reached by the triers of fact, nor do we conclude that defendant was not proven guilty beyond a reasonable doubt. (*People v. Alexander* (1990), 202 Ill. App. 3d 20, 24, 559 N.E.2d 567.) Therefore, we must affirm the conviction.

We agree that the customs agent's testimony concerning the momentary look of panic that Peter displayed when the canister of talcum was to be reinspected buttressed the inference of her guilty knowledge. But we disagree with defendant's position that this evidence was improperly admitted.

It is true, as defendant states, that, generally, a witness may testify only to matters within his or her personal knowledge or recollection and may not testify as to an opinion or conclusion about such matters. (*People v. Linkogle* (1977), 54 Ill. App. 3d 830, 368 N.E.2d 1075.) However, to every rule there are exceptions. Where it is difficult to explain the conditions perceived and the opinion is one that persons are generally capable of making, comprehending and understanding, a nonexpert witness may summarize sensory perceptions or express an opinion based upon observation. (*United States v. Alexander* (7th Cir. 1969), 415 F. 2d 1352; *People v. Sprinkle* (1979), 74 Ill. App. 3d 456, 393 N.E.2d 94; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.4, at 576 (5th ed. 1990).) For example, a nonexpert may give opinion testimony on matters such as speed, size, weight, and color. *People v. Canity* (1981), 100 Ill. App. 3d 135, 426 N.E.2d 591.

Although the testimony complained of in the present case is somewhat different, we believe that it was properly admitted. Expressions on a person's face are certainly difficult, if not impossible, to explain or reproduce, and we are generally accustomed to, and capable of, understanding and interpreting such expressions in our everyday life. Therefore, the customs agent's testimony concerning his perception of the momentary change of expression on defendant's face, *i.e.*, the flash of panic that he observed cross defendant's face when he picked up the canister of talcum powder for the second time, was a description and not an improper conclusion which usurped the role of the jury.

In her final claimed error, Peter argues that her sentence should be reduced from 12 years to 9 years, the statutory minimum. (Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1401.2(1).) She contends that the trial judge impermissibly increased her sentence based upon its consideration of factors which are inherent in the statutory scheme for determining the severity of the offense, namely, the amount of heroin found in her possession and the harm to society caused by the narcotics trade. In addition, defendant argues that the trial court did not give sufficient consideration to the mitigating factors, namely, that she was a 25-year-old student with no prior criminal background, who was, at most, shown to have been a courier, but who apparently had no other connection to the drug trade. For these reasons defendant asks this court to find that the trial court abused its discretion in imposing a sentence greater than the minimum.

Although we agree that the sentence imposed is a severe one, especially when the record indicates that defendant had been, up to the time of her seizure, a respectable young person with great potential, we do not feel that the trial court's sentence, which was within the statutory guidelines, was an abuse of discretion. Consequently, we must not alter it.

A trial court's decision with respect to sentencing is entitled to great weight and deference. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Whenever the sentence imposed falls within the statutorily mandated guidelines, it will not be overturned as excessive unless there is an affirmative showing that the sentence varies greatly from the purpose and spirit of the law or is manifestly violative of constitutional guidelines. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Foster* (1990), 199 Ill. App. 3d 372, 556 N.E.2d 1289.

In this case defendant was convicted of possession of 240.51 grams of 91% pure heroin, which carries a sentencing range of not

less than 9 years and not more 40 years. (Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1402.1(1).) Defendant's sentence of 12 years was well within the statutory range of sentences that could have been imposed. Furthermore, we do not believe it was improper for the court to have noted the amount and purity of the heroin found in defendant's possession when deciding what might be an appropriate sentence within the sentencing range. After all, a quantity of heroin in excess of 100 grams, but less than 400 grams, is susceptible to the same range of sentencing. Thus the fact that the defendant possessed a quantity of drugs in excess of the minimum for that sentencing range, as well as the fact that the drug was found to have a high level of purity, indicating its potency and potential for having a far-reaching impact on society, are factors which the trial court may consider when attempting to strike a balance between protecting society and rehabilitating the offender. We find no abuse of discretion.

For all the reasons stated above, the judgment of conviction and sentence is affirmed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.