THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN CUNNINGHAM, Defendant-Appellant.

First District (5th Division) No. 1—00—4176

Opinion filed September 13, 2002.

GREIMAN, J., dissenting.

Dennis Doherty, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Thomas J. Loftus, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a bench trial, the defendant, Brian Cunningham, was found guilty of possession of a controlled substance and sentenced to 30 months' probation. On appeal, Cunningham argues that the State failed to prove his guilt beyond a reasonable doubt. Specifically, Cunningham claims the testimony of the arresting officer was so unlikely and improbable that it was unworthy of belief and raised a reasonable doubt of his guilt. For the reasons that follow, we reverse the decision of the trial court.

## THE FACTS

Cunningham was charged with unlawful possession of a controlled substance with intent to deliver in connection with an incident that occurred in the early morning hours of December 15, 1998, on the northwest side of Chicago, Illinois.

At trial, Chicago police officer David Pfest was the sole witness. On direct examination, Officer Pfest testified that on December 15, 1998, at approximately 12:30 a.m., he was working as a tactical officer in the vicinity of 3800 North Elston Avenue. At that time, he was approached by an unidentified citizen. This person told him a man named "Gumby" was selling narcotics from his car and provided the cell phone number where "Gumby" could be reached.

Officer Pfest telephoned the number and a woman answered. He told her that he needed an "eight ball," the term used in the drug trade for one-eighth of an ounce of cocaine. She then asked if he was "Kevin from Elston by Leona's." Officer Pfest answered that he was and she told him that Gumby was not there, but to call back exactly 15 minutes later.

Officer Pfest did so, and this time a man responded to his call. When the officer asked for Gumby, the man asked what he needed. Officer Pfest repeated his cocaine request, and the man told him he needed 15 minutes to go home and get it. The man said he would sound the horn of his car when he arrived at the location on Elston Avenue near Leona's Restaurants (Leona's).

Approximately 15 minutes later, a station wagon drove up there and the horn sounded. Officer Pfest radioed the other members of his team, then approached the vehicle. He observed that Cunningham was the driver with two female passengers. When Officer Pfest got to within four feet of Cunningham, he saw a plastic bag containing a "yellowish white substance" in defendant's hand. When Cunningham looked at Officer Pfest, his eyes widened, and after he looked toward the approaching police cars, he threw the bag to the floor of the car. Officer Pfest ordered Cunningham out of the vehicle and another officer recovered the bag of suspected cocaine. The bag was inventoried and sent to the laboratory for analysis. The parties later stipulated that the material in the bag tested positive for 2.9 grams of cocaine.

During cross-examination, Officer Pfest stated he was working in plain clothes. When the citizen approached him, he and his partner were in a vehicle. However, Officer Pfest could not remember which partner he was with. Officer Pfest testified that the citizen flagged down his car in basically the same area where the arrest took place.

Officer Pfest testified that when the citizen approached him, the citizen said, "here is a telephone number, call this number, ask for Gumby and you can order narcotics." When asked to describe the citizen, Officer Pfest said that he was a white male who was in his late twenties to early thirties. When asked how the citizen was dressed, Officer Pfest testified, "I don't recall, I know he had probably blue jeans and just a T-shirt on."

Officer Pfest did not include a description of the citizen in his police report. Officer Pfest could not recall if he asked the citizen where he got the telephone number. When asked if he questioned the citizen at all, Officer Pfest responded, "I believe I did, there was a conversation with the subject." Officer Pfest was then asked if he memorialized the conversation he had with the citizen. He responded, "other than what is in the report, no." He was then asked, "[the] report just says, citizen gave you this number and [said to] call it, you can order narcotics?" Officer Pfest said, "[b]asically, yes." However, the record reveals that there is absolutely no reference to an unidentified citizen anywhere in his police report.

Officer Pfest did not ask this person to participate in the investigation that followed. After giving the information, the citizen walked away. Officer Pfest further related that he conferred with his surveillance team before he called the number provided by the citizen. When asked, "where did you make the call from physically?" Officer Pfest said, "I believe it was on the cell phone." Officer Pfest could not recall whose cell phone he used when he made the telephone call.

Officer Pfest testified that when he saw the defendant in the car,

he realized that he had seen him before and may have previously arrested him for disorderly conduct. Officer Pfest acknowledged that defendant did not attempt to hand anything to him and that the passengers in the car were arrested and charged with disorderly conduct due to the disturbance they created at the scene.

The trial court found Cunningham not guilty of possession with intent to deliver, but guilty of the lesser-included offense of possession of a controlled substance. The court then sentenced Cunningham to 30 months' probation. This appeal follows.

## ANALYSIS

On appeal, Cunningham contends his conviction should be reversed because the testimony on which it was based was so palpably unlikely and improbable as to be unworthy of belief. Cunningham maintains Officer Pfest's testimony was contrary to human nature and experience and raised a reasonable doubt of his guilt. We agree.

■ Where, as here, a defendant challenges the sufficiency of the evidence to sustain his conviction, it is our duty to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). In a bench trial, it is the province of the trial court to determine the credibility and weight of the testimony, to resolve the inconsistencies and conflicts therein and to render its decision accordingly. *People v. Berland*, 74 Ill. 2d 286, 305-06 (1978).

It is our duty to carefully examine the evidence while giving due consideration to the fact that the trial court saw and heard the witnesses. If, however, after such consideration, we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). That is, a criminal conviction cannot stand on appeal if the prosecution's evidence is so weak as to create a reasonable doubt of the defendant's guilt. *People v. Gilliam*, 172 Ill. 2d 484, 515 (1996).

Here, the State failed to carry its burden and consequently this matter must be reversed. The State's entire case hinges on the uncorroborated testimony of Officer Pfest, which is so lacking in details that it cannot form the basis for proof beyond a reasonable doubt.

Officer Pfest testified to a series of events on December 15, 1998, which began with a tip from an unidentified citizen about drug sales in the area of Elston Avenue near Leona's. He also testified to his follow-up of the tip, which culminated in the defendant's arrest at the

designated location within the period specified by the man answering his second telephone call. The material in the bag defendant discarded as the police approached tested positive for 2.9 grams of cocaine.

■ Ordinarily, when viewed in the light most favorable to the prosecution, this evidence standing alone, *if believed by the court*, might be sufficient to establish the elements of the offense of unlawful possession of a controlled substance. *People v. Alexander*, 202 Ill. App. 3d 20, 24 (1990). However, on these peculiar facts taken as a whole, we find Officer Pfest's testimony to be incredible, unbelievable, uncorroborated and bordering on the fiction from which fairytales are made. It is important to note that the trial court found the defendant *not guilty* of the charged offense, *i.e.*, unlawful possession of a controlled substance *with intent to deliver*, but guilty of the lesser included offense of possession and sentenced defendant to 30 months' probation.

To begin, Officer Pfest allegedly was flagged down by an unknown citizen. How did the citizen know that Pfest was a police officer when Pfest was dressed in plain clothes and working undercover? The citizen then allegedly gave Officer Pfest a telephone number and informed him that "Gumby" was selling drugs and that the officer could call the telephone number and order drugs. Officer Pfest allegedly did not question the citizen about how he got the telephone number or about how he knew the individual sold drugs or ask for a description of "Gumby." Strangely, Officer Pfest who was not alone, could not remember who his partner was when this conversation occurred.

When asked to describe the citizen, Officer Pfest described the citizen as a white male who was in his late twenties to early thirties. Officer Pfest then goes on to say that he thought the individual was wearing blue jeans and a T-shirt. Now, with that extra piece of information, if it can be called that, this court has a fairly good idea of what the citizen looked like. He probably stood out on the cold streets of Chicago on December 15, 1998, dressed like that. Officer Pfest testified that the arrest took place on December 15, 1998, but his arrest report showed the date of arrest as December 14, 1998, at 0030 hours, with an initial court date of December 15, 1998.

On the police report, which is signed by Officer Pfest, there is absolutely no mention of an unknown citizen nor any mention of a conversion that led to Officer Pfest coming into possession of "Gumby's" phone number. The telephone number that Officer Pfest allegedly called does not appear in the police report nor did he testify to calling any particular number. The State never asked Officer Pfest to recall the number he dialed. In addition, Officer Pfest could not recall where he dialed the number from. Without this peculiar set of facts, we wonder if Officer Pfest had probable cause to make a stop?

Next, after Officer Pfest allegedly called the telephone number and placed his order for an "eight ball" of cocaine, Cunningham allegedly arrived approximately 15 minutes later. After Cunningham pulls up at the agreed-upon destination to meet and honks his horn, Officer Pfest pulls his radio out of his pocket and radios for back up, puts the radio back into his pocket and then approaches the vehicle without the defendant realizing he was a police officer.

When Officer Pfest was within four feet of the car, he allegedly recognized that the defendant was holding a plastic bag in his right hand that contained a yellowish-white substance. Officer Pfest allegedly was able to see all of this although it was dark outside, he was wearing a hooded sweatshirt with the hood up and the defendant's window was raised. At this point, the defendant allegedly recognizes that Officer Pfest is someone who had arrested him before and allegedly drops the narcotics on the floor of the vehicle. What a coincidence!

Also, not so surprisingly, Cunningham did not possess what amounted to be an eight ball of cocaine. The amount that was recovered was less than an eight ball by approximately .6 grams. However, that discrepancy was conveniently explained away by Officer Pfest, who testified that drug dealers regularly cheat their customers.

Credibility of a witness is within the province of the trier of fact. It is clear that in finding the defendant *not guilty* of the original charge the trial court also had its own reservations regarding the credibility of the State's one witness, Officer Pfest. Based on this record, the lesser included charge likewise cannot stand.

The findings of the trial judge as to the credibility of the witnesses are entitled to great weight, but a reviewing court cannot in every case accept the trial judge's findings as conclusive. It is this court's duty to examine the evidence in a criminal case, and we should not hesitate to reverse a conviction where the State's evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Smith*, 141 Ill. 2d 40, 55 (1990); *People v. Pellegrino*, 30 Ill. 2d 331, 334-35 (1964); *People v. Dawson*, 22 Ill. 2d 260, 264-65 (1961).

In conclusion, we find this whole scenario as described by Officer Pfest to be contrary to human experience and unworthy of belief. Accordingly, we reverse the judgment of the circuit court of Cook County.

Reversed.

CAMPBELL, P.J., concurs.

JUSTICE GREIMAN, dissenting:

This case is not about the legality of defendant's arrest. We are neither faced with a fourth amendment question nor need we ponder whether the arresting officer had probable cause to "stop" defendant or look into his motor vehicle.

The record includes an unsigned motion to quash arrest and suppress evidence; however, there is no transcript to any hearing, no order with respect to this motion, and defendant does not raise the issue on appeal. Only the majority speculates that the arresting officer may not have had actual probable cause. This issue, if it ever was an issue, is waived on appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Twenty-two months after the evening in question, the officer testified to the events of December 15, 1998.

The majority reverses because the testifying officer did not make reference, in the police report, to the initial encounter with the informer (although every line of the report was used) and cannot remember the name of the other officer who was serving with him when the informer came forward. Further, the majority places very little, if any, weight on the fact that the officer's police report makes reference to the alleged telephone call he made to defendant and the person on the other end of the line stating that defendant would meet the officer in 15 minutes at the location indicated by the officer. It is, of course, interesting to note that 15 minutes later the defendant did appear at the appointed location and that the officer immediately called his support team before approaching defendant's car.

While it is a bit disconcerting that the informant was alleged to be wearing jeans and a T-shirt in mid-December, it is more interesting to note that the informant advised the officer to call and ask for "Gumby." It may come as a surprise to the majority that the defendant has a tattoo of Gumby on his back, as stated in the police report that was introduced into evidence.

It is further interesting to note that the testifying officer did not recover the cocaine from defendant's car. Rather, it was Officer Albie that entered defendant's car and obtained the plastic bag containing the drugs. The majority makes much of the fact that an "eight ball" in street parlance is one-eighth of an ounce of cocaine and the bag contained only 2.9 grams of cocaine or .6 grams less than an "eight ball" would be. I am shocked that a drug dealer would cheat a customer out of .6 grams of cocaine. We know that we cannot trust Enron Corporation or Arthur Andersen, but now even drug dealers are not to be trusted? Whom can we trust?

At trial, the arresting officer did testify that drug users are often short-changed by their dealers.

Surely, it would be comforting if the testifying officer knew the identity of the officer who served with him 22 months earlier, the phone number he called, whose cell phone he used to place the call, and the identity of the mysterious informant. However, this is not a case where the officer testified that the "drugs were on the front seat." We are always suspicious of those cases because we think drug dealers must be smarter than to leave their merchandise in plain view. Here, we have a defendant who set up a rendezvous to deliver the goods, honked his horn at the appropriate place, as agreed, and was prepared to deliver on his telephonic promise to provide cocaine to the officer.

Contrary to the majority's view, the elements of possession were proved and the trial court had the benefit of watching the witnesses' demeanor. The trial court obviously took great care in hearing the evidence, which is illustrated by the trial court's decision to find defendant not guilty of possession of a controlled substance with intent to deliver.

Lastly, the majority has accurately set out the standard of review, stating "it is our duty to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992)." 333 Ill. App. 3d at 1048. I cite few cases with respect to the proper standard of review, because the majority has accurately set forth the standard of review ... and then ignored it.

For the foregoing reasons, the majority should have affirmed the defendant's conviction for possession of a controlled substance.

Accordingly, I respectfully dissent.