THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) No. 99 CR 1730
 )
BRIAN CUNNINGHAM, ) Honorable
 ) Sharon M. Sullivan,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE REID delivered the opinion of the court:
 Following a bench trial, the defendant, Brian Cunningham, was found
guilty of possession of a controlled substance and sentenced to 30 months'
probation. On appeal, Cunningham argues that the State failed to prove his
guilt beyond a reasonable doubt. Specifically, Cunningham claims the
testimony of the arresting officer was so unlikely and improbable that it
was unworthy of belief and raised a reasonable doubt of his guilt.
For the reasons that follow, we reverse the decision of the trial court.
 THE FACTS
 Cunningham was charged with unlawful possession of a controlled
substance with intent to deliver in connection with an incident that
occurred in the early morning hours of December 15, 1998, on the northwest
side of Chicago, Illinois.
 At trial, Chicago police officer David Pfest was the sole witness.
On direct examination, Officer Pfest testified that on December 15, 1998,
at approximately 12:30 a.m., he was working as a tactical officer in the
vicinity of 3800 North Elston Avenue. At that time, he was approached by
an unidentified citizen. This
person told him a man named "Gumby" was selling narcotics from his car and
provided the cell phone number where "Gumby" could be reached.
 Officer Pfest telephoned the number and a woman answered. He told
her that he needed an "eight ball," the term used in the drug trade for one-
eighth of an ounce of cocaine. She then asked if he was "Kevin from Elston
by Leona's." Officer Pfest answered
that he was and she told him that Gumby was not there, but to call back
exactly 15 minutes later.
 Officer Pfest did so, and this time a man responded to his call.
When the officer asked for Gumby, the man asked what he needed. Officer
Pfest repeated his cocaine request, and the man told him he needed 15
minutes to go home and get it. The man said he would sound the horn of his
car when he arrived at the location on Elston near Leona's Restaurants
(Leona's).
 Approximately 15 minutes later, a station wagon drove up there and
the horn sounded. Officer Pfest radioed the other members of his team,
then approached the vehicle. He observed that Cunningham was the driver
with two female passengers. When Officer Pfest got to within four feet of
Cunningham, he saw a plastic bag containing a "yellowish white substance"
in defendant's hand. When Cunningham looked at Officer Pfest, his eyes
widened, and after he looked toward the approaching police cars, he threw
the bag to the floor of the car. Officer Pfest ordered Cunningham out of
the vehicle and another officer recovered the bag of suspect cocaine. The
bag was inventoried and sent to the laboratory for analysis. The parties
later stipulated that the material in the bag tested positive for 2.9 grams
of cocaine.
 During cross-examination, Officer Pfest stated he was working in
plainclothes. When the citizen approached him, he and his partner were in
a vehicle. However, Officer Pfest could not remember which partner he was
with. Officer Pfest testified that the citizen flagged down his car in
basically the same area where the arrest took place.
 Officer Pfest testified that when the citizen approached him, the
citizen said, "here is a telephone number, call this number, ask for Gumby
and you can order narcotics." When asked to describe the citizen, Officer
Pfest said that he was a white male who was in his late twenties to early
thirties. When asked how the citizen was dressed, Officer Pfest testified,
"I don't recall, I know he had probably blue jeans and just a T-shirt on."
 Officer Pfest did not include a description of the citizen in his
police report. Officer Pfest could not recall if he asked the citizen
where he got the telephone number. When asked if he questioned the citizen
at all, Officer Pfest responded, "I believe I did, there was a conversation
with the subject." Officer Pfest was then asked if he memorialized the
conversation he had with the citizen. He responded, "other than what is in
the report, no." He was then asked, "[the] report just says, citizen gave
you this number and [said to] call it, you can order narcotics?" Officer
Pfest said, "[b]asically, yes." However, the record reveals that there is
absolutely no reference to an unidentified citizen anywhere in his police
report.
 Officer Pfest did not ask this person to participate in the
investigation that followed. After giving the information, the citizen
walked away. Officer Pfest further related that he conferred with his
surveillance team before he called the number provided by the citizen.
When asked, "where did you make the call from physically?" Officer Pfest
said, "I believe it was on the cell phone." Officer Pfest could not recall
whose cell phone he used when he made the telephone call.
 Officer Pfest testified that when he saw the defendant in the car, he
realized that he had seen him before and may have previously arrested him
for disorderly conduct. Officer Pfest acknowledged that defendant did not
attempt to hand anything to him and that the passengers in the car were
arrested and charged with disorderly conduct due to the disturbance they
created at the scene.
 The trial court found Cunningham not guilty of possession with intent
to deliver, but guilty of the lesser-included offense of possession of a
controlled substance. The court then sentenced Cunningham to 30 months'
probation. This appeal follows.
 ANALYSIS
 On appeal, Cunningham contends his conviction should be reversed
because the testimony on which it was based was so palpably unlikely and
improbable as to be unworthy of belief. Cunningham maintains Officer
Pfest's testimony was contrary to human nature and experience and raised a
reasonable doubt of his guilt. We agree.
 Where, as here, a defendant challenges the sufficiency of the
evidence to sustain his conviction, it is our duty to determine whether,
after viewing the evidence in the light most favorable to the State, any
rational trier of fact could have found the defendant guilty of the
essential elements of the crime beyond a reasonable doubt. People v.
Campbell, 146 Ill. 2d 363, 374 (1992). In a bench trial, it is the
province of the trial court to determine the credibility and weight of the
testimony, to resolve the inconsistencies and conflicts therein and to
render its decision accordingly. People v. Berland, 74 Ill. 2d 286, 305-06
(1978).
 It is our duty to carefully examine the evidence while giving due
consideration to the fact that the trial court saw and heard the witnesses.
 If, however, after such consideration, we are of the opinion that the
evidence is insufficient to establish the defendant's guilt beyond a
reasonable doubt, we must reverse the conviction. People v. Smith, 185
Ill. 2d 532, 541 (1999). That is, a criminal conviction cannot stand on
appeal if the prosecution's evidence is so weak as to create a reasonable
doubt of the defendant's guilt. People v. Gilliam, 172 Ill. 2d 484, 515
(1996).
 Here, the State failed to carry its burden and consequently this
matter must be reversed. The State's entire case hinges on the
uncorroborated testimony of Officer Pfest, which is so lacking in details
that it cannot form the basis for proof beyond a reasonable doubt.
 Officer Pfest testified to a series of events on December 15, 1998,
which began with a tip from an unidentified citizen about drug sales in the
area of Elston Avenue near Leona's. He also testified to his follow-up of
the tip, which culminated in the defendant's arrest at the designated
location within the period specified by the man answering his second
telephone call. The material in the bag defendant discarded as the police
approached tested positive for 2.9 grams of cocaine.
 Ordinarily, when viewed in the light most favorable to the
prosecution, this evidence standing alone, if believed by the court, might
be sufficient to establish the elements of the offense of unlawful
possession of a controlled substance. People v. Alexander, 202 Ill. App.
3d 20, 24 (1990). However, on these peculiar facts taken as a whole, we
find Officer Pfest's testimony to be incredible, unbelievable,
uncorroborated and bordering on the fiction from which fairytales are made.
 It is important to note that the trial court found the defendant not
guilty of the charged offense, i.e., unlawful possession of a controlled
substance with intent to deliver, but guilty of the lesser included offense
of possession and sentenced defendant to 30 months' probation.
 To begin, Officer Pfest allegedly was flagged down by an unknown
citizen. How did the citizen know that Pfest was a police officer when
Pfest was dressed in plainclothes and working undercover? The citizen then
allegedly gave Officer Pfest a telephone number and informed him that
"Gumby" was selling drugs and that the officer could call the telephone
number and order drugs. Officer Pfest allegedly did not question the
citizen about how he got the telephone number or about how he knew the
individual sold drugs or ask for a description of "Gumby." Strangely,
Officer Pfest who was not alone, could not remember who his partner was
when this conversation occurred.
 When asked to describe the citizen, Officer Pfest described the
citizen as a white male who was in his late twenties to early thirties.
Officer Pfest then goes on to say that he thought the individual was
wearing blue jeans and a T-shirt. Now, with that extra piece of
information, if it can be called that, this court has a fairly good idea of
what the citizen looked like. He probably stood out on the cold streets of
Chicago on December 15, 1998, dressed like that. Officer Pfest testified
that the arrest took place on December 15, 1998, but his arrest report
showed the date of arrest as December 14, 1998, at 0030 hours, with an
initial court date of December 15, 1998.
 On the police report, which is signed by Officer Pfest, there is
absolutely no mention of an unknown citizen nor any mention of a conversion
that led to Officer Pfest coming into possession of "Gumby's" phone number.
 The telephone number that Officer Pfest allegedly called does not appear
in the police report nor did he testify to calling any particular number.
The State never asked Officer Pfest to recall the number he dialed. In
addition, Officer Pfest could not recall where he dialed the number from.
Without this peculiar set of facts, we wonder if Officer Pfest had probable
cause to make a stop?
 Next, after Officer Pfest allegedly called the telephone number and
placed his order for an "eight ball" of cocaine, Cunningham allegedly
arrived approximately 15 minutes later. After Cunningham pulls up at the
agreed-upon destination to meet and honks his horn, Officer Pfest pulls his
radio out of his pocket and radios for back up, puts the radio back into
his pocket and then approaches the vehicle without the defendant realizing
he was a police officer.
 When Officer Pfest was within four feet of the car, he allegedly
recognized that the defendant was holding a plastic bag in his right hand
that contained a yellowish white substance. Officer Pfest allegedly was
able to see all of this although it was dark outside, he was wearing a
hooded sweatshirt with the hood up and the defendant's window was raised.
At this point, the defendant allegedly recognizes that Officer Pfest is
someone who had arrested him before and allegedly drops the narcotics on
the floor of the vehicle. What a coincidence!
 Also, not so surprisingly, Cunningham did not possess what amounted
to be an eight ball of cocaine. The amount that was recovered was less
than an eight ball by approximately .6 grams. However, that discrepancy
was conveniently explained away by Officer Pfest, who testified that drug
dealers regularly cheat their customers.
 Credibility of a witness is within the province of the trier of fact.
 It is clear that in finding the defendant not guilty of the original
charge the trial court also had its own reservations regarding the
credibility of the State's one witness, Officer Pfest. Based on this
record, the lesser included charge likewise cannot stand.
 The findings of the trial judge as to the credibility of the
witnesses are entitled to great weight, but a reviewing court cannot in
every case accept the trial judge's findings as conclusive. It is this
court's duty to examine the evidence in a criminal case, and we should not
hesitate to reverse a conviction where the State's evidence is so
unreasonable, improbable, or unsatisfactory as to justify a reasonable
doubt of defendant's guilt. People v. Smith, 141 Ill. 2d 40, 55 (1990);
People v. Pellegrino, 30 Ill. 2d 331, 334-35 (1964); People v. Dawson, 22
Ill. 2d 260, 264-65 (1961).
 In conclusion, we find this whole scenario as described by Officer
Pfest to be contrary to human experience and unworthy of belief.
Accordingly, we reverse the judgment of the circuit court of Cook County.
 Reversed.
CAMPBELL, P.J., concurs.

 JUSTICE GREIMAN, dissenting:
 This case is not about the legality of defendant's arrest. We are
neither faced with a fourth amendment question nor need we ponder whether
the arresting officer had probable cause to "stop" defendant or look into
his motor vehicle.
 The record includes an unsigned motion to quash arrest and suppress
evidence; however, there is no transcript to any hearing, no order with
respect this motion, and defendant does not raise the issue on appeal.
Only the majority speculates that the arresting officer may not have had
actual probable cause. This issue, if it ever was an issue, is waived on
appeal. See People v. Enoch, 122 Ill. 2d 176, 186 (1988).
 Twenty-two months after the evening in question, the officer
testified to the events of December 15, 1998.
 The majority reverses because the testifying officer did not make
reference, in the police report, to the initial encounter with the informer
(although every line of the report was used) and cannot remember the name
of the other officer who was serving with him when the informer came
forward. Further, the majority places very little, if any, weight on the
fact that the officer's police report makes reference to the alleged
telephone call he made to defendant and the person on the other end of the
line stating that defendant would meet the officer in 15 minutes at the
location indicated by the officer. It is, of course, interesting to note
that 15 minutes later the defendant did appear at the appointed location
and that the officer immediately called his support team before approaching
defendant's car.
 While it is a bit disconcerting that the informant was alleged to be
wearing jeans and a T-shirt in mid-December, it is more interesting to note
that the informant advised the officer to call and ask for "Gumby." It may
come as a surprise to the majority that the defendant has a tattoo of Gumby
on his back, as stated in the police report that was introduced into
evidence.
 It is further interesting to note that the testifying officer did not
recover the cocaine from defendant's car. Rather, it was Officer Albie
that entered defendant's car and obtained the plastic bag containing the
drugs. The majority makes much of the fact that an "eight ball" in street
parlance is an one-eighth of an ounce of cocaine and the bag contained only
2.9 grams of cocaine or .6 grams less than an "eight ball" would be. I am
shocked that a drug dealer would cheat a customer out of .6 grams of
cocaine. We know that we cannot trust Enron Corporation or Arthur
Anderson, but now even drug dealers are not to be trusted? Whom can we
trust?
 At trial, the arresting officer did testify that drug users are often
short-changed by their dealers.
 Surely, it would be comforting if the testifying officer knew the
identity of the officer who served with him 22 months earlier, the phone
number he called, whose cell phone he used to place the call, and the
identity of the mysterious informant. However, this is not a case where
the officer testified that the "drugs were on the front seat." We are
always suspicious of those cases because we think drug dealers must be
smarter than to leave their merchandise in plain view. Here, we have a
defendant who set up a rendezvous to deliver the goods, honked his horn at
the appropriate place, as agreed, and was prepared to deliver on his
telephonic promise to provide cocaine to the officer.
 Contrary to the majority's view, the elements of possession were
proved and the trial court had the benefit of watching the witnesses'
demeanor. The trial court obviously took great care in hearing the
evidence, which is illustrated by the trial court's decision to find
defendant not guilty of possession of a controlled substance with intent to
deliver.
 Lastly, the majority has accurately set out the standard of review,
stating "it is our duty to determine whether, after viewing the evidence in
the light most favorable to the State, any rational trier of fact could
have found the defendant guilty of the essential elements of the crime
beyond a reasonable doubt. People v. Campbell, 146 Ill. 2d 363, 374
(1992)." Slip op. at 6. I cite few cases with respect to the proper
standard of review, because the majority has accurately set forth the
standard of review ... and then ignored it.
 For the foregoing reasons, the majority should have affirmed the
defendant's conviction for possession of a controlled substance.
 Accordingly, I respectfully dissent.