NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190542-U

NO. 4-19-0542

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 15, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ROBERT D. JONES, | ) | No. 94CF451 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Esteban F. Sanchez, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's dismissal of defendant's amended postconviction petition.

¶ 2    In August 1996, a jury found defendant, Robert D. Jones, guilty of first degree murder (720 ILCS 5/9-1(a) (West 1992)) for the 1992 killing of Dr. Henry Street Dickerman Jr. That conviction was later reversed and the case remanded by this court. See *People v. Jones*, 294 Ill. App. 3d 1125, 721 N.E.2d 863 (1998) (table) (unpublished order under Supreme Court Rule 23). In June 1998, a jury again found defendant guilty of first degree murder.

¶ 3    In January 2001, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Postconviction Act). 725 ILCS 5/122-1 *et seq.* (West 2000). In 2004, the trial court advanced the petition to the second stage and appointed counsel to represent defendant. The petition was continued for many years as defendant and counsel attempted to gather

documents to support defendant's postconviction claims.

¶ 4		In May 2017, defendant *pro se* filed an amended petition for postconviction relief in which he alleged the State had failed to disclose items of exculpatory evidence, including an FBI memorandum reporting a sighting of Dickerman after his disappearance. Also in May 2017, defendant filed a motion to proceed *pro se* and discharge his appointed counsel, and the trial court later granted that motion.

¶ 5		In February 2019, the State moved to dismiss defendant's petition, and the trial court later dismissed defendant's petition.

¶ 6		Defendant appeals, arguing that (1) the trial court failed to comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) when it allowed defendant to discharge his attorney and proceed *pro se* during a telephone conference which occurred off the record and (2) the trial court erroneously weighed the credibility of facts when dismissing defendant's petition. We disagree and affirm.

¶ 7		                    I. BACKGROUND

¶ 8		In August 1996, a jury found defendant, Robert D. Jones, guilty of first degree murder (720 ILCS 5/9-1(a) (West 1992)) for the August 1992 killing of Dr. Henry Street Dickerman Jr. That conviction was later reversed and the case remanded by this court. See *People v. Jones*, 294 Ill. App. 3d 1125, 721 N.E.2d 863 (1998) (table) (unpublished order under Supreme Court Rule 23). In June 1998, a jury again found defendant guilty of first degree murder.

¶ 9		Although we need not discuss every fact that came out at the trials, the timeline of events is important to this discussion. Dickerman went to work on August 11, 1992. The following day, Dickerman did not show for his regular Wednesday night bridge game, and two of his friends went to his home to check on him but did not find him. On September 1, 1992, Illinois State Police

examined Dickerman's home and found apparent blood spatter in the upstairs bathroom on the wall, windowsill, and rug. On September 5, 1992, two hikers found a partially skeletonized male body in a ravine in Pacific Palisades Recreational Area in St. Louis. The body was later identified as Dickerman.

¶ 10　　　　In January 2001, defendant *pro se* filed a petition for postconviction relief pursuant to the Postconviction Act. In 2004, after an inadvertent delay, the trial court advanced the petition to the second stage and appointed counsel to represent defendant. The petition was continued for many years as defendant and counsel attempted to gather documents to support defendant's postconviction claims.

¶ 11　　　　In March 2011, defendant informed the court that he had "come into possession of a number of reports from the Federal Bureau of Investigation through Freedom of Information." Defendant asked for more time to review the reports.

¶ 12　　　　In February 2012, defendant requested a subpoena *duces tecum* for the FBI so that he could obtain documents from its investigation into Dickerman's murder. Defendant's postconviction counsel stated that some of trial counsel's documents from the trial were destroyed in a flood in trial counsel's basement but that postconviction counsel "had all of the stuff from his representation. There's absolutely no FBI reports in there." The State replied that the trial prosecutors stated that they had received and disclosed the FBI reports. Postconviction counsel responded that if they had been tendered to the defense, he did not see any of them until defendant submitted a Freedom of Information Act (FOIA) request. The court continued the hearing so that the State could provide more information about what documents had been disclosed.

¶ 13　　　　In March 2012, the State filed a response to defendant's request for a subpoena in which it stated that FBI agents were on defendant's witness list at trial and that this meant

defendant was aware of the FBI investigation. The State also asserted that a "box of telephone records" obtained by the FBI was tendered in discovery.

¶ 14 Later that month at a hearing on the motion, defendant stated that trial counsel was aware of the FBI's investigation but the defense did not have all of the reports because an assistant state's attorney picked certain files to be tendered and "hundreds of pages of FBI reports" were not tendered to defendant. The State replied, "I've talked with both counsel that he had at trial, and they said that they had FBI reports." The State also noted that trial counsel's files were destroyed in a flood.

¶ 15 In May 2017, defendant *pro se* filed an amended petition for postconviction relief in which he alleged the State had failed to disclose items of exculpatory evidence, including an FBI memorandum reporting a sighting of Dickerman after his disappearance. Defendant attached the memorandum to his petition, which stated that a woman named Merlin Gesell said she and her husband on August 17, 1992, encountered an elderly man at the Rend Lake rest area who said he was a doctor. She and her husband watched the news several nights later which reported on Dickerman's disappearance, and they were "sure it was he and his vehicle." She immediately called the Springfield Police Department, but the person they talked to did not take their information.

¶ 16 That same day in May 2017, defendant *pro se* filed a motion to proceed *pro se* and discharge his appointed counsel. In June 2017, the trial court created a docket entry in which it stated that at a telephone conference to be held later that month, the court would address issues including "1) Attorney Vincent's Motion to Withdraw" and "2) Pro Se request of Defendant." No transcript from that later telephone conference exists, but the trial court filed that same day an order allowing counsel to withdraw.

¶ 17		In February 2019, the State moved to dismiss defendant's petition, arguing (1) defendant provided no support that the FBI memorandum was concealed or exculpatory, (2) the information in the FBI memorandum was not credible, and (3) the result of the proceedings would not have been different because the evidence of defendant's guilt was overwhelming. The State also noted that even defendant's version of events included that Dickerman died on August 11, 1992, so a claimed sighting after that date must be incorrect.

¶ 18		In March 2019, defendant filed an answer to the State's motion to dismiss in which he argued that the State had acknowledged previously "that the file was not disclosed prior to either trial." Defendant further noted that the sighting was only 50 miles from the location where Dickerman's body was found.

¶ 19		In May 2019, the State filed a reply to defendant's answer in which the State argued that defendant repeatedly claimed his trial attorneys did not receive documents but defendant did not attach affidavits from trial counsel or other evidence to substantiate these claims.

¶ 20		In July 2019, the trial court issued a detailed 35-page order in which it concluded, in pertinent part, that the report of Gesell's sighting of Dickerman "is not material to the issue of guilt or innocence of [defendant] or to his sentence. Ms. Ge[s]ell's report is unsubstantiated, speculative and is not reliable, and therefore, not material to the issues before the jury." The court dismissed defendant's petition.

¶ 21		This appeal followed.

¶ 22		II. ANALYSIS

¶ 23		Defendant appeals, arguing that (1) the trial court failed to comply with Illinois Supreme Court Rule 401 (eff. July 1, 1984) when it allowed defendant to discharge his attorney and proceed *pro se* during a telephone conference which occurred off the record and (2) the trial

court erroneously weighed the credibility of facts when dismissing defendant's petition. We disagree and affirm.

¶ 24                                   A. Rule 401 Does Not Apply

¶ 25        As an initial matter, we note that defendant does not claim he did not know what he was doing when he waived counsel. Defendant contends only that the trial court erred by not following Rule 401 when granting defendant's request to proceed *pro se*. We conclude that Rule 401 simply does not apply to these proceedings.

¶ 26        The rule states, "The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court ***." Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Because postconviction proceedings are a collateral attack on a judgment, in the context of the proceedings, the defendant is accused of nothing.

¶ 27        Although not cited by either party, this matter was clearly decided in *People v. Harrison*, 2018 IL App (3d) 150419, 115 N.E.3d 239. In that case, the Third District cited our prior decision in *People v. Young*, 341 Ill. App. 3d 379, 387, 792 N.E.2d 468, 475 (2003), in support of the proposition that Rule 401(a) admonishments are not required in postconviction proceedings because a person who has already been convicted and sentenced would already know everything the Rule 401(a) admonishment would have told him. *Harrison*, 2018 IL App (3d) 150419, ¶ 18.

¶ 28        A mere glance at this case reveals that this principle holds true. First, defendant must know the nature of the charge because he has already been convicted of that charge in two separate trials. Second, defendant must know the maximum and minimum sentence because he was sentenced pursuant to that range. Third, he knows he has the right to counsel because he had

appointed counsel and was attempting to discharge him.

¶ 29    These admonishments serve a clear purpose in pretrial proceedings, but that purpose does not exist in postconviction proceedings. Nonetheless, we believe it would be good practice to have a hearing on the record when a defendant seeks to discharge his or her counsel in postconviction proceedings. A trial court's taking a few minutes to do so would make clear that defendant is making an informed decision and ensure he or she has no lingering questions prior to making this important decision.

¶ 30    B. The Trial Court Did Not Err by Dismissing Defendant's Petition

¶ 31    Defendant contends that the trial court erred by dismissing his postconviction petition because the FBI memorandum was not disclosed and amounted to a *Brady v. Maryland*, 373 U.S. 83 (1963), violation. However, as the State correctly points out, for there to be any violation, the State must be in possession of the evidence or information in question.

¶ 32    1. *The Law*

¶ 33    "A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either wil[l]fully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." *People v. Beaman*, 229 Ill. 2d 56, 73-74, 890 N.E.2d 500, 510 (2008). "Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *Id.* at 74. The Illinois Supreme Court has noted that implicit in the requirement that the State failed to disclose something they should have, "is establishing the fact that the State does possess certain evidence." *People v. Guest*, 115 Ill. 2d 72, 91, 503 N.E.2d 255, 263 (1986). Put differently, "a defendant 'must establish that he requested the evidence in question, and that the State in fact possessed it and failed to

disclose it.' " *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 68, 70 N.E.3d 695 (quoting *People v. House*, 141 Ill. 2d 323, 387, 566 N.E.2d 259, 288 (1990)).

¶ 34                                         2. *This Case*

¶ 35          Defendant claimed he received only a limited number of FBI documents in discovery prior to trial; he contends that long after trial, he received many more pages of FBI documents through a FOIA request. However, defendant failed to allege that the State ever had possession of those additional FBI documents, including the FBI memorandum described previously. Because defendant has not even alleged that the prosecutor in his case possessed these documents prior to trial, his *Brady* claim is deficient.

¶ 36                                         III. CONCLUSION

¶ 37          For the reasons stated, we affirm the trial court's judgment.

¶ 38          Affirmed.